# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Jorge E. Ordonez Maluf,

               Plaintiff

v.

Bergelectric Corp.,

               Defendant

Case No. 2:23-cv-00115-CDS-MDC

**Order Granting in Part Defendant's Motion for Summary Judgment and Granting Defendant's Request for Judicial Notice**

[ECF Nos. 81, 82]

This is an employment discrimination action brought by pro se plaintiff Jorge Maluf against defendant Bergelectric Corporation alleging (1) discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (1990); (2) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981; (3) interference in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2614(a) ; and (4) violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34 (ADEA). Am. compl., ECF No. 8. Bergelectric filed a motion for summary judgment which Maluf opposes. Mot. for summ. j., ECF No. 81; Opp'n, ECF No. 84.[1] For the reasons herein, I grant in part Bergelectric's motion for summary judgment.[2] Bergelectric's motion for summary judgment is granted as to Maluf's ADA, and FMLA, claims, but denied as to Maluf's Title VII and ADEA claims.

---

[1] This motion is fully briefed. *See* Am. reply, ECF No. 44. Bergelectric also filed an objection to certain evidence that Maluf provided in support of his opposition to its motion. Obj., ECF No. 86. I will only address the objections if the material objected to changes the outcome of the motion. *See Fireman's Fund Ins. Co. v. Nat'l Bank for Coops.*, 849 F. Supp. 1347, 1352 n.1 (N.D. Cal. 1994).

[2] Bergelectric filed a request for judicial notice (ECF No. 82) asking that I take notice of pertinent portions of the EEOC investigative file associated with Maluf's charge of discrimination (EEOC Case No. 487-2021-00822). This includes: the cover sheet associated with the EEOC's response to defendant's FOIA request; (2) plaintiff's charge of discrimination; (3) summary of investigator's interview with plaintiff; investigator's recommendation form; and plaintiff's 10/14/22 Right to Sue. *See generally* ECF No. 82. Courts within the Ninth Circuit routinely take judicial notice of documents from the EEOC. *See Overstreet v. Living Spaces Furniture LLC*, 2023 U.S. Dist. LEXIS 117010, at * 9 (D. Ariz. July 7, 2023) (collecting cases). Therefore, Bergelectric's request is granted.

## I.    Background[3]

Maluf is an electrician who worked for Bergelectric as a licensed master electrician from November 4, 2019 to October 18, 2021. ECF No. 8 at ¶ 6; *see* Maluf dep. vol 1, Def.'s Ex. 36, ECF No. 81-2 at 10:18–20; Maluf resignation letter, Def.'s Ex. 31, ECF No. 81-1 at 117. He suffers from a degenerative disc disease. ECF No. 8 at ¶ 7; *see* Health provider certificate, Def.'s Ex. 15, ECF No. 81-1 at 68. On December 8, 2020, his degenerative disc disease "caused him severe pain and discomfort," so Maluf requested an accommodation from Janel McLean, one of Bergelectric's human resources (HR) managers. ECF No. 8 at ¶ 13; 12.08.20 call log, Pl.'s Ex. 14, ECF No. 84-1 at 86–87. One week later, on December 15, 2020, Maluf made the same request to another HR manager, Katrina Jimenez. 12.15.20 call log, Pl.'s Ex. 15, ECF No. 84-1 at 88–90.  On December 17, 2020, Jimenez told Maluf that his only option was leave under the Family Medical Leave Act (FMLA) until his doctor released him to "full unrestricted duty." ECF No. 8 at ¶ 14; *see* 12.17.20 email, Pl.'s Ex. 16, ECF No. 84-1 at 92 ("Bergelectric cannot accommodate work restrictions or modifications"). On December 29, 2020, Jimenez conditionally approved Maluf's FMLA leave pending receipt of Maluf's healthcare provider certification. *See* 1.20.2020 email exchange, Pl.'s Ex. 18, ECF No. 84-1 at 122; Def.'s Ex. 16, ECF No. 81-1 at 75. Bergelectric received the healthcare provider certification on January 9, 2020. Healthcare provider certification, Def.'s Ex. 15, ECF No. 81-1 at 65. The certification identified the following physical restrictions: prolonged sitting or standing over twenty minutes, repetitive bending or lifting." *See id.* at 68–69.

On January 12, McLean reached out to Maluf advising him that Bergelectric had received his healthcare provider certification and requested to speak with him over the phone regarding next steps. Pl.'s Ex. 18, ECF No. 84-1 at 122; Def.'s Ex. 16, ECF No. 81-1 at 75. That same day, Maluf replied requesting to only engage via email. Pl.'s Ex. 18, ECF No. 84-1 at 121; Def.'s Ex. 16, ECF No. 81-1 at 75. McLean responded the same day reiterating the request to speak with him

---

[3] Unless otherwise noted, the court only cites to Maluf's complaint to provide context to this action, not to indicate a finding of fact.

regarding his FMLA certification and stating that speaking by phone was the best way to go about this. Pl.'s Ex. 18, ECF No. 84-1 at 121; Def.'s Ex. 16, ECF No. 81-1 at 74. Maluf responded and again reiterated his request to only speak via email. Pl.'s Ex. 18, ECF No. 84-1 at 120; Def.'s Ex. 16, ECF No. 81-1 at 74. On January 18, 2021, McLean again reached out to Maluf to tell him it was "imperative" that they speak on the phone about his FMLA request and any workplace accommodations. Pl.'s Ex. 18, ECF No. 84-1 at 119–20; Def.'s Ex. 16, ECF No. 81-1 at 73. On January 19, 2021, Maluf responded and said that he has made himself "100% available to communicate" and asked if his unwillingness to speak via phone call meant his FMLA was denied. Pl.'s Ex. 18, ECF No. 84-1 at 119–20; Def.'s Ex. 16, ECF No. 81-1 at 72.

On January 20, 2021, Maluf received an email from Megan Guzman, one of Bergelectric's senior HR managers. Def.'s Ex. 16, ECF No. 81-1 at 71. The email stated that due to his inability to communicate with Bergelectric regarding his requested accommodations, it has been determined that the accommodations requested—no prolonged sitting or standing for more than twenty minutes or repetitive bending or lifting—could not be accommodated. *Id.* Maluf was granted FMLA leave through February 23, 2021. *Id.*

On February 22, 2021, Maluf provided Bergelectric with an updated health provider certification that stated he was allowed to return to work on February 23, 2021 for "full, unrestricted duty." 2.22.21 healthcare provider certification, Def.'s Ex. 19, ECF No. 81-1 at 83. Maluf then alleges that Mike McGowan, the general manager of Bergelectric, demoted him to an entry-level position requiring physical labor at an off-base location, with a reduction in pay from $66 per hour to $42. 2.25.21 email, Pl.'s Ex. 35, ECF No. 84-1 at 164–65.[4] Maluf says he learned that his former position was now held by Alfredo Murua, a forty-five-year-old general foreman, and Denise Lealao, a forty-one-year-old serving in the quality control position.[5] Knippel, decl.,

---

[4] Although not alleged in the complaint, prior to his FMLA leave, Bergelectric does not dispute that Maluf was a general contractor on the Nellis project, where he was working to update a hospital at the Nellis Air Force Base. ECF No. 81 at 2 (citing Def.'s Exs. 33, 36).

[5] Based on the complaint and Maluf's briefing, he worked as a general contractor and in the quality control position. *See* ECF No. 84 at 22.

Def.'s Ex. 33, ECF No. 81-1 at 125–26, ¶ 10; Maluf dep. vol. 1, Def.'s Ex. 36, ECF No. 81-1 at 58:18–19.[6] *Id.* at ¶ 18. Murua does not have an electrician license from the State of Nevada and Lealao "did not have Maluf's experience." *Id.*

Maluf alleges that his new job required physical labor that caused him pain. ECF No. 8 at ¶ 20; Maluf decl., Pl.'s Ex. 39, ECF No. 84-1 at 130, ¶ 30 (describing the job as "strenuous physically demanding"). He also claims that he was subject to "isolation, gossip and harassment" to include: "[d]aily yelling profanities[,] criticizing the work in progress, humiliating comments that Maluf was demoted for incompetence, and the constant reminder that Nevada is at-will State [sic] and you can be fire [sic] at any time." ECF No. 8 at ¶ 21; Maluf. dep. vol. 1, Def.'s Ex. 36, ECF No. 81-2 at 184:3–186:13; Maluf dep. vol. 2, Def.'s Ex. 37, ECF No. 81-3 at 262:25–268:16. Maluf, who is from Argentina, also alleges that his immediate supervisor, Nathan Westmoreland, called him names like Che Guevara and Evita Peron and mocked his accent in front of subordinates and customers. *Id.* at ¶ 23; Maluf dep. vol. 2 at 328:20–25, 333:8–25. Maluf alleges that all of this culminated in a hostile work environment. ECF No. 8 at ¶ 25. Maluf resigned on October 18, 2021, after receiving psychological treatment. *See* Resignation email and medical docs., Pl.'s Ex. 38, ECF No. 84-1 at 177.

## II.    Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed;

---

[6] Maluf does not state Lealao's age in the deposition, but it is undisputed by Bergelectric that she is forty-one. *See* ECF No. 81 at 25.

the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

## III.    Discussion

### A.    Bergelectric's motion for summary judgment.

#### 1.    *Maluf's Title VII, ADA, and ADEA claims are not barred by the statute of limitations.*

Before a claimant can file a Title VII, ADA, or ADEA claim, he must file a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC). *See Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 383 (9th Cir. 1997) (Title VII); *Jason v. Adobe, Inc.*, 2025 U.S. Dist. LEXIS 5405, at *8 (D. Or. Jan. 10, 2025) (ADA); *Thompson v. Fin Registers, Inc.*, 2011 U.S. Dist. LEXIS 122902, at *5 (D. Ariz. Oct. 24, 2011) (ADEA). If the EEOC dismisses the charge, the claimant has ninety days to file a civil action. 42 U.S.C. § 2000(e)-5(f)(1). If a litigant does not file suit within ninety days of the date the EEOC dismisses a claim, then the action is time barred. *Bayless v. Bd. of Trs. of the Clark Cnty. Sch. Dist.*, 2022 U.S. Dist. LEXIS 182208, at *11 (D. Nev. Oct. 4, 2022) (citing *Payan v. Aramark Mgmt. Servs. Ltd. P'ship.*, 495 F.3d 1119, 1121 (9th Cir. 2007)).

Bergelectric argues that Maluf's Title VII, ADA, and ADEA claims are time barred because Maluf did not file his lawsuit within the ninety days required by the EEOC. ECF No. 81 at 10. To support this argument, Bergelectric provided a copy of Maluf's EEOC right-to-sue-letter, which it received after issuing a request to the EEOC using the Freedom of Information Act (FOIA). *See* EEOC file docs. & letter, Def.'s Ex. 39, ECF No. 81-3 at 200. The letter states that

it was "issued on" October 14, 2022. *Id.* In response, Maluf argues that although the letter was signed on October 14, 2022, the EEOC did not release or make the letter publicly available until October 27, 2022. ECF No. 84 at 21. To support this argument, Maluf provides a copy of his EEOC portal log and an email exchange with a federal investigator at the EEOC. *See* EEOC portal log & emails, Pl.'s Ex. 36, ECF No. 84-1 at 167–170. The federal investigator informed Maluf that the ninety-day clock starts on the "date that [the right-to-sue letter is] released." *Id.* at 167. According to the portal log, the EEOC right-to-sue letter and notice that it was dismissing the charge was "released" on October 27, 2022. *Id.* at 168. Therefore, looking at the facts in the light most favorable to Maluf, I find that the ninety-day clock started on October 27, 2022. To ensure his claims were not time barred, Maluf needed to file his action by January 25, 2023.

A review of the docket reveals Maluf met that deadline: he filed for leave to proceed *in forma pauperis* (IFP) on January 23, 2023. Mot., ECF No. 2. His complaint was attached to that application. *See* ECF No. 2-1. When a party files for leave to proceed IFP, the complaint must be screened to determine whether the complaint is frivolous, malicious, or fails to state a plausible claim. *See* 28 U.S.C. § 1915(e)(2)(B). Now-retired Magistrate Judge Cam Ferenbach screened the complaint and determined that some of Maluf's claims were viable on February 8, 2023. ECF No. 5. That same day, Maluf's complaint was docketed. ECF No. 6. I decline to apply Bergelectric's argument that the date the complaint was docketed, February 8, controls whether the filing was within the ninety-day timeline. ECF No. 81 at 11. Courts in this district have found that a complaint is deemed filed "upon presentation to the court clerk when accompanied by an IFP motion[.]" *Pullano v. #8170, CCDC Guard*, 2011 U.S. Dist. LEXIS 74179, at *13–14 (D. Nev. July 7, 2011). I agree as any other result would be not only untenable, but inequitable, because the complaining party would be at the mercy of the magistrate judge's docket. Therefore, for purposes of the EEOC ninety-day clock, Maluf's complaint was deemed filed on January 23, 2023. Accordingly, his Title VII, ADA, and ADEA claims are therefore timely.

### 2. *Bergelectric is entitled to summary judgment on Maluf's ADA claim.*

Maluf alleges that Bergelectric violated the ADA because it "refused to accommodate [his] disability." ECF No. 8 at 31. To establish a prima facie case under the ADA for failure to accommodate, Maluf must demonstrate that (1) he is disabled under the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999)). In resolving summary judgment motions for ADA claims, courts apply the burden-shifting analysis derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49–50 (2003) (applying *McDonnell Douglas* burden-shifting framework to ADA disability discrimination claim). The burden-shifting analysis requires a plaintiff to establish a prima facie case under the law. Failing to establish any of the elements listed above is fatal to an ADA claim. *See, e.g., Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 272 (9th Cir. 1996) (affirming grant of summary judgment when plaintiff "failed to produce evidence showing that she has a disability"). However, if a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Raytheon*, 540 U.S. at 49 n.3. If a defendant proffers a nondiscriminatory reason for termination, "the presumption of intentional discrimination disappears," but the plaintiff can still prove disparate treatment by offering evidence that a defendant's proffered reason is pretextual. *Id.* (citation omitted).

Bergelectric argues that Maluf does not provide any evidence demonstrating he suffered an adverse employment action in connection with his disability or any failure to accommodate and request for accommodation. ECF No. 81 at 17. Maluf first claims that when he returned to work in February 2021 with a doctor's note indicating he was released for unrestricted duty, he was "demoted" to an entry-level position which required physical labor at an off-base location and reduced his pay from $66 per hour to $42 per hour. ECF No. 8 at ¶ 17. Bergelectric argues

that this was not an adverse action because the reasons for this decision had nothing to do with Maluf's disability; there was simply no available project to place Maluf in the field at that time. ECF No. 81 at 17. The position on the project that Maluf was working on, and was dismissed from, prior to his FMLA leave, was necessarily filled, and there were no other projects with openings at the time; so, plaintiff was not demoted but placed in "Pre-Fab." *Id.* As to the reduction in pay, Bergelectric argues Maluf "misunderstands or intentionally misrepresents" the reason for the reduction in pay. *Id.* at 18.[7] Bergelectric explains:

> Plaintiff began his employment at $42.00 an hour. In December 2019, when he began work on the Nellis project, he became entitled to a prevailing wage as it was a public works project. As such, Plaintiff's hourly rate was bumped up to $43.83. Then, on 9/9/20, Plaintiff's hourly rate on the Nellis project was bumped up to $46.83, but "<u>only for the duration of the project</u>". That rate was necessarily restored to $42 an hour after Plaintiff was removed from the Nellis project for poor performance and assigned to Pre-Fab, which was not a prevailing wage job, and thus necessitated a return to Plaintiff's original hourly rate of $42.00. Thus, Plaintiff never suffered a reduction in pay as $42.00 was in fact his normal rate of pay when not working a prevailing wage project; and the undisputed facts shows [sic] he was removed from prevailing wage work on the Nellis project for poor performance rather than any protected reason.

*Id.* (internal citations to exhibits omitted).

Bergelectric also argues that Maluf's decision to resign is not an adverse employment action because it was Maluf's choice. *Id.* at 19. It further argues that Maluf's resignation was not constructive discharge. *Id.* In response, Maluf submits that the adverse employment action taken by Bergelectric was his removal from the project he had been on prior to his accommodation requests, and that Bergelectric misrepresents that there were no similarly situated openings for him to be placed in instead of being forced into "Pre-Fab". ECF No. 84 at 23. In response to Bergelectric's argument that his resignation was voluntary and thus not constructive discharge, Maluf argues "[i]n contrast, Plaintiff's resignation was recommended by his treating physicians

---

[7] Bergelectric also discusses Maluf's loss of use of a company car, but that claim is not present in the complaint, so I do not consider it.

and occurred after months of adverse conditions." *Id.* at 27.[8] In reply, Bergelectric argues that the undisputed facts demonstrate that Maluf was taken off of his project due to performance, well before he requested accommodations, that the only available position after his return from FMLA was the position in Pre-Fab, and that this loss of wages was necessarily tied to the removal from the project. ECF No. 85 at 17.

To survive summary judgment, Maluf must put forth evidence demonstrating that **because** of Bergelectric's failure to accommodate, he suffered an adverse employment action. *See Howell v. Washoe Cnty.*, 2025 U.S. Dist. LEXIS 53332, at *15 (D. Nev. Mar. 24, 2025) (emphasis added). "In the failure to accommodate context, an adverse employment action may consist of a situation where 'the employer's failure to reasonably accommodate a known disability . . . leads to discharge for performance inadequacies resulting from that disability.'" *Serrano v. Grand Sierra Operating Corp.*, 2013 U.S. Dist. LEXIS 168076, at *13 (D. Nev. Nov. 26, 2013) (quoting *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1140 (9th Cir. 2001)). Construing Maluf's pleadings liberally, he seems to argue that his removal from the Nellis project was because of his requests for accommodation. *See* ECF No. 8 at ¶¶ 9, 13, 14, 15, 16, 17, 18. In response, Bergelectric states that the undisputed facts show that Maluf was removed from the project *before* his requests for accommodations due to poor performance. ECF No. 81 at 3 (emphasis added). Bergelectric explains:

> In July 2020, JE Dunn contacted Bergelectric to express its concerns regarding the lack of "supervision and coordination" in connection with Bergelectric's performance on the Nellis project. When asked whether it was the entire Bergelectric staff or a single person, JE Dunn specifically identified Maluf as the issue. As a result of Maluf's poor performance, JE Dunn, the prime contractor, was "*not getting the information [it] need[ed] to plan and coordinate and [it] continue[d] to miss dates.*" Based on the foregoing, JE Dunn requested that Bergelectric bring in a new field supervision, i.e., a new General Foreman. While Bergelectric wanted to immediately comply with JE Dunn's request, it couldn't do so because its

---

[8] Although there is discussion of constructive discharge in the briefing related to the ADA claim, a review of the complaint demonstrates that Maluf only alleges constructive discharge in relation to his Title VII claim, not his ADA claim. Therefore, I do not address it here and solely address it when analyzing the Title VII claim.

leadership team was tied up on a larger project. Still unhappy with the quality of work and impatient for Bergelectric to install new field leadership to replace Maluf, on October 27, 2020, JE Dunn emailed Bergelectric to "*discuss issues at Nellis*". That correspondence led to a meeting on October 30ᵗʰ wherein JE Dunn again demanded that new field leadership be installed to replace Maluf on the Nellis AFB project due to his ongoing performance issues. . . . Maluf's ongoing poor performance was also noted by Bergelectric's Project Manager, James Harrison, who contacted Bergelectric's Operations Manager, Jeff Dubs; and Superintendent, Nathan Westmoreland, regarding "*issues with our current GF*". On November 12, 2020, Bergelectric's Superintendent on the project, Nathan Westmoreland, weighed in on Maluf's poor performance. Mr. Westmoreland noted that Maluf was ignoring his requests; and placing an inordinate amount of responsibility onto field leadership to compensate for his lack of engagement on the project. As a result of said poor performance, Mr. Westmoreland recommended "*Maluf be removed from the Nellis project effective immediately*." However, the issue with replacing Maluf remained, Bergelectric was still unable to find a replacement for him. Ultimately, **as a result of a November 19, 2020**, call from JE Dunn putting Bergelectric "*on final notice to provide [a] new field supervision plan*" **it was decided that Bergelectric Superintendent, Nate Westmoreland, would replace Maluf on the Nellis [sic] until an alternative could be installed**. . . . Ultimately by December 2, 2020, Bergelectric found both a permanent General Foreman and Quality Control replacement for the Nellis AFB project, Alfredo Murua, and Denise Lealao, respectively.

*Id.* at 3–4 (internal citations to exhibits omitted).

I find that the record clearly demonstrates that Maluf's removal from the Nellis project was not brought on by Bergelectric's failure to provide him an accommodation. This is fatal to Maluf's claim because an adverse employment action must come **after** the alleged failure to accommodate. It does not matter when the employee began experiencing health issues. *See Serrano*, 2013 U.S. Dist. LEXIS 168076, at *13. Maluf began to experience health issues on November 13, 2020, and did not request an accommodation until mid-December. McLean decl., Def.s Ex. 34, ECF No. 81-1 at 133, ¶ 4. The emails provided by Bergelectric reveal there were issues with Maluf's supervision of the Nellis project long before he requested an accommodation. *See, e.g.*, Def.'s Exs., 4, 5, 6, 7, 8, 9 (emails between July and November of 2020, containing statements such as "consider this my recommendation that Jorge Maluf be removed from the Nellis project effective immediately," "another instance of issues with [Maluf] on site,"

"this is why I have issues with our current [General Foreman] on the project," and "the onsite supervision and coordination is still lacking"). Although Maluf disputes that there were problems with his performance on the Nellis project, and provides evidence supporting the dispute, the evidence he provides does not overcome the evidence showing the decision to remove him on from the Nellis project on November 20, 2020, was made before he requested an accommodation. *Id.* Consequently, Maluf cannot demonstrate that the decision to take him off the project was **because of** any failure to accommodate his disability.

I therefore turn to whether Maluf has demonstrated a genuine issue of material fact exists as to why Maluf was placed on Pre-Fab upon his return from leave. In his complaint, Maluf claims that he was placed in Pre-Fab because of his accommodation requests. ECF No. 8 at ¶¶ 17, 32, 33. Bergelectric argues that Maluf was placed in Pre-Fab because there were no projects with open positions, and that he was placed in Pre-Fab until a position became available. ECF No. 81 at 17; Knippel decl., Def.s Ex. 33, ECF No. 81-1 at 126 ¶¶ 11,13. In response, Maluf argues that this is disingenuous because Bergelectric admits that it struggled to find a person to replace Maluf on the Nellis project, but then claims that just two months later there were no openings available. ECF No. 84 at 24 (citing Def.'s Ex.33, ECF No. 81-1 at ¶¶ 8, 9). Maluf also states that there have been numerous postings on Bergelectric's website, Glassdoor, and Google advertising Bergelectric's open positions during the relevant time. Job postings, Pl.'s Ex. 19, ECF No. 84-1 at 124–127. In reply, Bergelectric reiterates that Maluf has not met his burden to demonstrate a genuine issue of material fact.

Indeed, Maluf has not met his burden demonstrating that Bergelectric's decision to place him on Pre-Fab was an adverse employment action done because of any alleged failure to accommodate. Although Maluf provides screenshots of "job postings" to indicate that there were a number of positions available at Bergelectric, he does not provide any information regarding what projects the job openings were for, or if any of them had ultimately been filled. Similarly, he provides photos of "sign in sheets" to demonstrate that there were open positions available, but

it is unclear what those people were hired for, when they were hired, and to what project they were assigned. Further, when asked during his deposition, Maluf could not name any open positions at Bergelectric that he could have worked at the time he was assigned to "Pre-Fab." *See* Maluf. dep. vol. 2, Def.'s Ex. 37, ECF No. 81-3 at 211:18–20 ("Q: 'so you couldn't identify any other position at the time you could have performed' A: 'no'"). Accordingly, I do not find that his placement in Pre-Fab was an adverse employment action done because of any failure to accommodate. The evidence demonstrates that when there were no projects available, Bergelectric placed its general foreman onto Pre-Fab and, when Maluf returned, no projects were available.

I also find that there is no genuine issue of material fact as to why Maluf's rate of pay changed. Maluf alleges that his pay was reduced from $66 an hour to $42. ECF No. 8 at ¶ 17. As a threshold matter, it is not entirely clear where Maluf gets the $66 an hour number. I assume it derives from the combination of the $46.83 and the $19.21 in benefits—which equates to $66.04.[9] Maluf provides no other documentation supporting his claim that he was paid $66 an hour. Regardless, Bergelectric does not dispute that Maluf's rate of pay changed. However, it explains that Maluf was given a raise from $42 an hour to $43.83 because the Nellis project was a public works project and Maluf was entitled to the "prevailing wage." ECF No. 81 at 18; *See* prevailing wage determination, Def.'s Ex. 2, ECF No. 81-1 at 9. It then says that Maluf was given another raise, from $43.83 to $46.83 per hour, but "*only for the duration of the project*". ECF No. 81 at 18 (emphasis in original). Maluf states that he was entitled to "an hourly rate of $43.83 and $19.21 in benefits per hour" and that he received a $3.00 raise, which equates to $46.83. ECF No. 84 at 8 (emphasis in original). Maluf further argues that he was not given the raises because of

---

[9] Maluf does not cite to any evidence confirming he received $19.21 in benefits. However, the Vice President of Bergelectric, Justin Knippel, stated in his declaration that while Maluf was on the Nellis project he was entitled to "19.21 in fringes per hour." Def.'s Ex. 33, ECF No. 81-1 at 123 ¶ 4. It is unclear if Maluf lost his benefits when he returned to work and was assigned to "Pre-Fab."

the project, but because of "merit." *Id.* (citing Bergelectric wage rate adjustment, Pl.'s Ex. 4, ECF No. 84-1 at 53).

I find that record demonstrates that Maluf was given these raises because of the Nellis project, and that he was only entitled to the raises while assigned to the Nellis project. Maluf's offer letter states that he was hired and would receive $42 per hour. *See* Maluf offer letter, Def.'s Ex. 1, ECF No. 81-1 at 6. Maluf received the first raise of $43. 83 in December 2019, when he began working on the Nellis project, approximately a year before he requested any disability-related accommodations. ECF No. 81 at 18 (citing Knipple decl., Def.s Ex. 33, ECF No. 81-1 at 123, ¶ 4). Bergelectric provides a copy of a State of Nevada Executive Order that requires contractors working on prevailing wage projects to pay their employees a certain rate. Prevailing wage determination, Def.'s Ex. 2, ECF No. 81-1 at 9. According to this document, all electricians must be paid at least $43.83. *See id.* at 10. Therefore, the evidence demonstrates that Maluf was given this raise because of the project he was on, not for any other reason. Indeed, Maluf received the additional $3 raise in September of 2020, three months prior to requesting any disability-related accommodations. Knippel decl., Defs. Ex. 33, ECF No. 81-1 at 123 ¶ 4. Maluf argues that he got an additional $3 raise because of "merit" and points to the Wage Rate Adjustment which says the reason for the raise is "merit." Bergelectric wage rate adjustment, Pl.'s Ex. 4, ECF No. 84-1 at 53. Bergelectric argues that that the $3 wage increase was because Maluf had been complaining about his rate of pay and they hoped that the short-term wage increase would curb his complaints. Def.'s Ex. 33, ECF No. 81-1 at 123, ¶ 4. It is true that the box next to "merit" is checked on the form. Pl.'s Ex. 4, ECF No. 84-1 at 53. But key here is that the form also says, "see comments" and in those comments it says, "We are doing a $3.00 over prevailing rate . . . **only for the duration of the project.**" *Id.* (emphasis added). It is clear from the form, and Knippel's declaration, that the additional money that Maluf was receiving was solely due to his position on the Nellis project. When he was taken off the project, he returned to his base rate of $42.00. *See* Maluf offer letter, Def.'s Ex. 1, ECF No. 81-1 at 6. Regardless, there is no evidence showing the

wage adjustment was an adverse employment action done because of his medical condition or his leave of absence accommodation. Because I find that Maluf does not demonstrate that he suffered an adverse employment action based on any failure to accommodate, his claim cannot survive summary judgment. Bergelectric's motion is granted as to this claim.

### 3. *Bergelectric is not entitled to summary judgment on Maluf's Title VII claim.*

Maluf next alleges that "by reducing his wages and creating different terms and conditions," Bergelectric created a hostile work environment which led to his constructive termination because of his national origin in violation of Title VII. ECF 8 at ¶ 40. Maluf is Argentinian. *Id.* at ¶ 8. As a threshold matter, although Maluf claims that he was subject to a "hostile work environment" this claim is brought under a disparate treatment theory.[10] To demonstrate national origin discrimination based on disparate treatment, Maluf must demonstrate that (1) he is a member of a protected class; (2) he performed according to his employer's legitimate expectations; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 604 (9th Cir. 2004) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). Maluf has successfully demonstrated that he is part of a protected class as he belongs to the class of people from Argentina or possessing Argentinian ancestry. Bergelectric disputes the other three elements, alleging that Maluf (1) was not performing according to its legitimate expectations, (2) was not subject to any adverse employment action, and (3) does not demonstrate that similarly situated individuals outside his protected class were treated more favorably. ECF No. 81 at 24. I address each argument in turn.

---

[10] Even if Maluf intended to bring this claim as a hostile work environment claim, he cannot do so as he did not exhaust any hostile work environment t claims with the EEOC. *See* EEOC Charge & investigation, Def.'s Ex. 39, ECF No. 81-3 at 195.

First, Bergelectric argues that Maluf was not qualified because he was not meeting expectations on the Nellis project and was not performing to the satisfaction of Bergelectric's client, JE Dunn. *Id.* In response, Maluf argues that he was qualified and performing to Bergelectric's legitimate expectations because he has an "immaculate record, free of disciplinary interventions, violations, and reprimands." ECF No. 84 at 25. Maluf also provides emails dated August 7, 2020, and November 2, 2020, from employees at JE Dunn that indicate he had been doing a good job on the project, and a letter of recommendation from JE Dunn Senior Quality Manager Tom Pearson dated December 12, 2022. *See* Emails, Pl.'s Exs. 23, 24, 26 ECF No.84- 1 at 139–142, 144; Letter of recommendation, Pl.'s Ex. 25, ECF No. 84-1 at 143.[11] Given the conflicting emails and the letter of recommendation, I find that there is a genuine issue of material fact as to whether Maluf was meeting his employer's legitimate expectations and was qualified to work on the Nellis project.

Second, Bergelectric argues that Maluf did not suffer an adverse employment action and incorporates the arguments it made in relation to the ADA claim as support. ECF No. 81 at 24. However, the ADA analysis asks whether Maluf suffered an adverse employment action **because of his disability** or any failure to accommodate. *See Allen* 348 F.3d at 1114 (emphasis added). When evaluating a Title VII claim, I am solely required to determine whether Maluf suffered an adverse employment action. *See Bergene v. Salt River Project Agric. & Improvement Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001). I find that there is a genuine issue of material fact as to whether Maluf's removal from the project was indeed a demotion. *See Quintana v. Clark Cnty. Sch. Dist.*, 2024 U.S. Dist. LEXIS 29192, at *18 (D. Nev. Feb. 21, 2024) (finding a demotion was an adverse employment action).

---

[11] Bergelectric objects to these exhibits as "inadmissible hearsay/lacks foundation/lacks personal knowledge." ECF No. 86 at 4. I decline to exclude these emails at this time based on these objections. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)("At the summary judgment stage, [the court does] not focus on the admissibility of the evidence's form. [The court] instead focus[es] on the admissibility of its content."); *see also Risk v. Kingdom of Norway*, 1991 U.S. Dist. LEXIS 7372, at *8 (N.D. Cal. May 23. 1991).

1    Third, Bergelectric argues that Maluf has not demonstrated that similarly situated

2  employees outside his protected class were treated more favorably because Alfredo Murua and

3  Denise Lealao, the individuals who replaced Maluf on the project, are both Hispanic and within

4  plaintiff's protected class. ECF No. 81 at 24. Maluf alleges that he was discriminated against

5  because he is Argentinian, a national origin, not an ethnicity. The fact that the similarly situated

6  individuals are both Hispanic is irrelevant. That Maluf has demonstrated that he was replaced

7  by two people not of Argentinian descent is sufficient to establish his prima facie case. *See Nam*

8  *Luu Van v. Hamilton*, 2006 U.S. Dist. LEXIS 36462, at *18 (E.D. Wash. June 2, 2006) ("[B]ecause

9  Plaintiff was replaced by a person of Filipino descent, which is different than Plaintiff's

10  Vietnamese national origin and race, he has established the fourth element of a prima facie case

11  of Title VII discrimination.").

12    Because Maluf has demonstrated a prima facie case of national origin discrimination, the

13  burden shifts to Bergelectric to identify a legitimate nondiscriminatory reason for removing

14  Maluf from the Nellis project. *See McDonnell Douglas*, 411 U.S. at 802. If it accomplishes this, Maluf

15  then must show that the proffered nondiscriminatory reason is pretextual. *France v. Johnson*, 795

16  F.3d 1170, 1175 (9th Cir. 2015). A plaintiff can demonstrate pretext "either directly by persuading

17  the court that a discriminatory reason more likely motivated the employer or indirectly by

18  showing that the employer's proffered explanation is unworthy of credence." *Chuang v. University*

19  *of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000).

20    Bergelectric argues that it removed Maluf from the project because of his poor

21  performance on the project and provides various emails demonstrating his poor performance.

22  *See, e.g.*, Def.'s Exs., 4, 5, 6, 7, 8, 9 (containing statements such as "consider this my

23  recommendation that Jorge Maluf be removed from the Nellis project effective immediately,"

24  "another instance of issues with [Maluf] on site," "this is why I have issues with our current

25  [General Foreman] on the project," and "the onsite supervision and coordination is still

26  lacking"). This is a legitimate non-discriminatory reason for his alleged demotion.

Accordingly, the burden shifts to Maluf to demonstrate pretext. Maluf's complaint alleges that Westmoreland, his supervisor on the Nellis project, called him names like Che Guevara and Evita Peron, and mocked his accent. ECF No. 8 at ¶ 23. Maluf reiterates this in his deposition where he states that Westermoreland would mimic his accent and called him "Che Guevara, Evita Peron, and an arrogant Argentinian." Maluf dep. vol. 2 at 328:20–25, 333:8–25. Given that Westmoreland was Maluf's supervisor on the Nellis project, I find that these allegedly discriminatory statements—combined with the evidence of the emails and letter of recommendation from JE Dunn indicating Maluf had done a good job on the Nellis project—are enough for Maluf to meet the low threshold to demonstrate that there is a genuine issue of material fact as to whether Bergelectric's explanation for his removal from the Nellis project is pretextual. *See Cervantes v. Emerald Cascade Rest. Sys.*, 2012 U.S. Dist. LEXIS 66804, at *12 (D. Nev. May 11, 2012) ("The standard to overcome summary judgment in a Title VII case is very low because most of the evidence presented will raise credibility issues, and, therefore, the plaintiff's right to a jury trial is zealously guarded.") (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)). Therefore, summary judgment is inappropriate as to the discrimination claim in violation of Title VII.

However, I do not find that Maluf was constructively terminated in violation of Title VII. Maluf alleges that while on Pre-Fab he was "subject to isolation, gossip harassment, such as: Daily yelling profanities[,] criticizing the work in progress, humiliating comments that Maluf was demoted due to incompetence, and the constant reminder that Nevada is an at-will state and you can be fire [sic] at any time." ECF No. 8 at ¶ 21; *see* Maluf. dep. vol. 1, Def.'s Ex. 36, ECF No. 81-2 at 184:3–186:13; Maluf dep. vol. 2, Def.'s Ex. 37, ECF No. 81-3 at 262:25–268:16.

To show constructive discharge, a plaintiff must show "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004). There is a high bar for constructive discharge claims "because federal antidiscrimination policies are better served when the employee and employer attack

discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007). Maluf alleges that his coworkers in the Pre-Fab unit never spoke to him, gossiped about the fact that he was demoted because he was "incompetent," and was not invited to a social lunch that everyone else was invited to. Maluf dep. vol. 2, Def.'s Ex. 37, ECF No. 81-3 at 262:25–268:16. However, when asked for details, Maluf could not remember the names of anyone who gossiped about him and said he was incompetent, stated only that he knew about the lunch because he "heard people talking," and that he wasn't even sure it "went through as planned." *See id.* Maluf only provided names of workers who "turned away" when he walked by. *Id.* Maluf also alleges that his supervisor, Mike Belcher, insulted him, criticized his work, and called him incompetent, among other things. Maluf. dep. vol. 1, Def.'s Ex. 36, ECF No. 81-2 at 184:3–186:13.

Even assuming these incidents were intolerable and highly egregious, there is no evidence that these incidents were related to Maluf's national origin. In fact, Maluf seems to indicate that he was treated poorly because he was "demoted for being incompetent" not because he is Argentinian. *See* Maluf dep., Def.'s Ex. 37, ECF No. 81-3 at 262:25–268:16. Additionally, Maluf admits that Belcher treated other employees "in the same way." Maluf. dep. vol. 1, Def.'s Ex. 36, ECF No. 81-2 at 186:10–13. Therefore, as a matter of law I cannot find that Maluf was constructively discharged based on his national origin. *EEOC v. Glob. Horizons, Inc.*, 2020 U.S. Dist. LEXIS 48836, at *78 (E.D. Wash. Mar. 20, 2020) (granting summary judgment for defendant because there was no evidence that plaintiffs suffered intolerable working conditions as a result of their national origin).

### 4. *Bergelectric is not entitled to summary judgment on Maluf's ADEA claim.*

Maluf next alleges that "by demoting [him], reducing his wages and creating different terms and conditions based on his age," Bergelectric violated the ADEA. ECF No. 8 at ¶ 38. The ADEA makes it unlawful "to discharge any individual . . . because of such individual's age."

29 U.S.C. § 623(a)(1). The Ninth Circuit utilizes the same burden shifting framework from *McDonnell Douglas* for an ADEA claim. *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207 (9th Cir. 2008). To demonstrate a prima facie case of age discrimination in violation of the ADEA, Maluf must demonstrate he was "(1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise "giving rise to an inference of age discrimination." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). A plaintiff may state a claim under the ADEA by alleging he was demoted instead of discharged. *Mendoza v. Macy's Inc.*, 2019 U.S. Dist. LEXIS 161288, at *10 (E.D. Cal. Sept. 19, 2019).

Maluf has met the first element as he was sixty-three years old when he worked at Bergelectric. *See* ECF No. 8 at ¶ 8. As to the second element, I incorporate my prior analyses for both the Title VII claim and the ADA claim and hold that there is a genuine issue of material fact as to whether Maluf was performing his job satisfactorily. As to the third element, as I explained above, there is a genuine issue of material fact as to whether his removal from the Nellis project constitutes a demotion. As to the fourth element, to demonstrate whether a plaintiff was replaced by someone substantially younger than them, the Ninth Circuit has held that an average age difference of ten years or more between the plaintiff and their replacement(s) will be presumptively substantial, whereas an age difference of less than ten years will be presumptively insubstantial. *France*, 795 F.3d at 1174. Because Maluf states that he was replaced by Denise Lealao, forty-one-year-old, and Alfredo Murua, forty-five-year-old, *see* ECF No. 8 at ¶ 18, these replacements are presumed to be substantially younger than him. Additionally, Maluf alleges that Murua did not have an electrician's license and Lealao did not have equivalent experience. *Id.*; *see* Maluf dep. vol. 1, Def.'s Ex. 36, ECF No. 81-2 at 50:4–20. Therefore, Maluf has demonstrated a prima facia case of discrimination in violation of the ADEA.

Bergelectric provides the same legitimate nondiscriminatory reason for removing Maluf from the Nellis project as it does for the Title VII claim. Therefore, the burden shifts to Maluf to

demonstrate pretext. In an ADEA claim, Maluf can demonstrate pretext indirectly by demonstrating that Bergelectric's explanation for removing him from the Nellis project is "unworthy of credence." *Clark v. Mirage Casino Hotel*, 2019 U.S. Dist. LEXIS 231863, at *8 (D. Nev. June 13, 2019) (quoting *Chuang*, 225 F.3d at 1127). Bergelectric argues that Maluf was removed from the Nellis project due to poor performance. Maluf cites to emails from JE Dunn employees indicating he had been doing a good job, and also provides a letter of recommendation from a JE Dunn employee demonstrating satisfaction with Maluf's work. *See* Emails, Pl.'s Exs. 23, 24, 26, ECF No.84- 1 at 139–142, 144; Letter of recommendation, Pl.'s Ex. 25, ECF No. 84-1 at 143 Because Maluf has demonstrated that there are genuine issues of material fact with respect to the credibility of Bergelectric's reasoning for taking Maluf off of the Nellis project, he has demonstrated an inference of pretext, and Bergelectric is not entitled to summary judgment on the ADEA claim. *Salehian v. Nev. State Treasurer's Off.*, 2024 U.S. App. LEXIS 28745, at *4 (9th Cir. Nov. 13, 2024).

### 5. Bergelectric is entitled to summary judgment on Maluf's FMLA claim.

Maluf also alleges that after he received FMLA leave and returned to work, he was reassigned and demoted with less pay in violation of the FMLA's prohibition on interference. ECF No. 8 at ¶ 34; *see* 29 U.S.C. § 2615(a)(1). Bergelectric construes this claim as a retaliation claim, *see* ECF No. 81 at 28 n.15, but I disagree. The Ninth Circuit has explained that a claim is one of interference when an employee is subject to negative consequences simply because they have used FMLA leave. *Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003) (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001)). "In contrast, where an employee is punished for *opposing* unlawful practices by the employer, the issue becomes one of discrimination and retaliation." *Id.* (emphasis in original). Because Maluf is alleging that he was subject to negative consequences for taking FMLA leave (i.e., the reassignment, demotion, and change in wages), this is a claim of interference.

The Ninth Circuit does not use the *McDonnell Douglas* burden-shifting framework on FMLA interference claims. *Id.* Rather, to establish a prima facie case of FMLA interference, a plaintiff must demonstrate (1) involvement in a protected activity under FMLA; (2) an adverse employment action, and (3) a causal link between the protected activity and the employment action. *Zsenyuk v. City of Carson*, 99 F. App'x 794, 796 (9th Cir. 2004). Maluf meets the first element, as he took FMLA leave. Maluf also meets the second element, that he potentially suffered an adverse employment action because he alleges facts that raise a genuine dispute of material fact about whether he was reassigned, demoted, and had his wages changed. But Maluf fails to satisfy the third prong because he fails to demonstrate causation for all three alleged adverse actions. Although Maluf alleges that his reassignment and his wage change were retaliatory acts, he was taken off the Nellis project before he began his FMLA leave. Maluf was sent FMLA paperwork on December 17, 2020: he was taken off the Nellis project just shy of one month earlier, on November 20, 2020, *see* Emails re: Nellis, Def.'s Ex. 9, ECF No. 81-1 at 27 ("Nate Westmoreland will be dedicated to be on the project full time until further notice"), so there is no causal connection between his decision to take FMLA and his removal from the Nellis project. Further, because Maluf's wages were changed **as a result of** the position he held while working on the Nellis project—not his use of FMLA—I also find there is no causal connection between Maluf's change in wages and his FMLA leave. Finally, Maluf does not demonstrate there is a genuine issue of material fact as to whether his Pre-Fab reassignment was causally connected to his FMLA leave. Although his Pre-Fab assignment occurred after he took FMLA, the only evidence Maluf provides to demonstrate that Bergelectric's decision to place him on Pre-Fab because of FMLA leave is that the reassignment happened upon his return from taking the leave. Maluf's evidence of temporal proximity alone is insufficient to survive summary judgment, particularly considering that the decision to take him off the Nellis project was entirely unrelated to his FMLA leave and he provides no evidence to suggest his assigned to Pre-Fab was the result of his leave. *Jacobson v. Carlton Hair*, 2011 U.S. Dist. LEXIS 165587, at *87 (C.D.

Cal. Jan. 31, 2011) ("Temporal proximity alone, however, is not sufficient to raise triable issues of fact regarding interference with the exercise of rights under the FMLA."); *see Zsenyuk*, 99 F. App'x. at 796 ("Zsenyuk has not met his burden of establishing a genuine issue on causation. He presented no direct evidence of causation, and the only circumstantial evidence offered is the temporal proximity between his assertion of FMLA rights and the first three instances of alleged interference listed in his complaint . . . ."); *Yates v. Nw. Barricade & Signs*, 2024 U.S. Dist. LEXIS 203289, at *11–12 (W.D. Wash. Nov. 7, 2024) (explaining that temporal proximity alone is not sufficient to demonstrate causation when there are other intervening events that give rise to the adverse employment action). Consequently, I find that Bergelectric is entitled to summary judgment on Maluf's FMLA claim.

Accordingly, Bergelectric's motion for summary judgment is granted as to Maluf's ADA, and FMLA, claims, but denied as to Maluf's Title VII and ADEA claims.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that Bergelectric's motion for summary judgment **[ECF No. 81 is GRANTED in part and denied in part** as set forth in this order. Maluf's Title VII and ADEA claims survive.

IT IS FURTHER ORDERED that Bergelectric's request for judicial notice **[ECF No. 82] is GRANTED.**

Dated: July 9, 2025

_____
Cristina D. Silva
United States District Judge